Before we begin this morning, Judge Chin has a motion. Yes, thank you, Judge Dyke. I do have a motion today. I'd like to move the admission of Fan Zhang, who is a member of the Bar and is in good standing with the Highest Court of California. I have knowledge of her credentials and I'm satisfied she possesses the necessary qualifications. I know these things because Ms. Zhang has been one of my clerks for the past year. A year ago, Ms. Zhang had a big challenge on her hands because she was replacing a star clerk and I was concerned what that was going to mean for me. But Ms. Zhang, she reminds me of an attribute that the late John Wooden said is the most important attribute of any of his basketball players and that's competitive greatness. Be at your best when your best is needed and Ms. Zhang has been at her best for a whole year and has been an outstanding service to the court. She's a strong analytical thinker. Her writing is always clear and well written, her work product. She knows right from wrong. She has excellent judgment. She knows how to keep closely guarded information secret, as apparently so do all of her co-clerks and that can be a very positive attribute, I think. In all, I think she would be a terrific member of our Bar and so I respectfully request that this motion be granted. Your motion is granted Judge Chen, Ms. Zhang. Welcome to the Bar of this Court and based on Judge Chen's representations, you should prosper and do well here. Thank you. Please raise your right hand. You solemnly swear that you will comport yourself as an attorney and counsel of this court, uprightly and according to law, and in the support of the Constitution of the United States of America. I do. Congratulations. Thank you. Okay. Now we have three argued cases this morning. The first one is number 182282, Loggerhead Tools, LLC versus Sears Holding Corporation. Mr. Skiermark. Thank you, Your Honor. May it please the Court. The new trial order that issued below and its post-verdict change to the claim construction of arm portion should be reversed and the jury's verdict of willful infringement should be reinstated. Apex argued or noted that the, quote, unique procedural posture, close quote, of this case does not matter. The only issue is whether the claim construction is correct, but that is not entirely accurate. It is a longstanding canon of this court that claims should not be construed in a results-oriented fashion, including without tailoring the construction to the accused device. And there is no question that canon of construction was violated in the new trial order. And there is no question that Judge, the late Judge Dara, when he evaluated the exact same issue with the exact same arguments with respect to the prosecution history and the construction of arm portion, and who did not violate the canon against results-oriented constructions, found that Loggerhead did not clearly and unmistakably surrender the very claim coverage that the new trial order found to be clearly surrendered post-verdict. Are you suggesting that any time a district court judge makes a reference to the accused product in construing the claims that that is a reversible error? No, I'm not. I'm trying to understand what if we conclude that the district court, based on all of the intrinsic evidence, got the claim construction right. I'm talking about Judge Pallmeyer here. And so even though she may have made another observation about the peculiarity of the prior construction in the context of the accused product, it's not clear to me why there would be any reversible error with her correct claim construction based on the intrinsic evidence. I agree with you, Your Honor, that if her claim construction is correct based on the intrinsic evidence, the fact that she violated that canon of construction along the way would probably be beside the point. But I began with that because I think it is starting from where Judge Pallmeyer started, which was to find that Judge Dara's claim construction was unworkable because it purportedly resulted in a finding that the max-axis locking wrench has an infringing arm portion, and she found that testimony, that expert opinion, to be arbitrary. Starting from that mistake, the mistake that the loggerhead expert identified an arm portion configured to engage the guide, and that identification was arbitrary, led to the search for a dictionary or some plain meaning that then compounded the errors and resulted in a misreading of the prosecution history and an over-reliance on a dictionary definition of the word arm, when the term for construction is the phrase arm portion, and prioritizing that dictionary definition over important intrinsic evidence, like the comparison of the asserted claims arm portion and other claims in both patents that shed more light on what the applicant and patentee was claiming with respect to arm portion, led her to make those errors as well. The dictionary definition of arm that she used does not define arm portion, and it says it's an identifiable appendage that is attached, not that projects from, is attached to an axis point or a body portion. But there are claims in both patents that go to both of those claim construction issues that she raised. In the 579 patent, there is a claim five that is identical in all respects to the asserted independent claim at trial, except it then adds a limitation that says that the arm portion further includes a pair of arms disposed on opposite sides of the body portion, such that the gripping element is substantially U-shaped. The claim that was found to be infringed by the jury does not say that the arm portion further includes a pair of arms. That claim term does not claim arms. It claims an arm portion. Further, claim 29, I believe it is, in the 470 patent, in the child patent that was asserted at trial, that claim defines an extension to a body portion that projects from the body portion to form a second body portion, where then there are two different body portions that can engage different aspects of the work piece. That language, projects from, is nowhere in the asserted claim, is nowhere in the prosecution history. And it's used only, coincidentally enough or interestingly enough, the project from language that actually exists in an unasserted claim is to define a second body portion. The projecting from in that loggerhead claim does not even define an arm or an arm portion. So you have clear claim differentiation issues that show, and Judge Pallmeyer, in starting with a dictionary definition of arm, when arm is not a claim term, arm portion is, all of that led to her error from thinking that she had to put more certainty. Essentially, she felt that the expert identifying the max axis locking wrenches arm portion of the gripping element that is configured to engage the guide, she thought that was arbitrary, so she went searching to put more meaning into the claim, and that is what led her to error. So I agree with you, Your Honor, that there are a number of Federal Circuit cases that say it is not error to know what the accused device is, or even sometimes to know what terms should be construed. You need to know what the accused device is and what the arguments are going to be. And so it is not that the accused device is irrelevant or there needs to be a cloak put over it during the markment process, but there are a dozen Federal Circuit cases that cite that canon of construction, and loggerhead submits that the error in Judge Pallmeyer's post-verdict change to the claim construction all resulted from her initial instinct that because the max axis locking wrench was found to have the claimed arm portion, the construction must be wrong. The construction provided to the jury in the jury instructions was correct because it is based on the language of the claims themselves. This is not a construction where Judge Darrow went off on some ledge to create, divine some definition of arm portion. Would you agree or disagree with the statement that the original construction was essentially functional only? No, I would not agree with that because for the same reason the claim is not functional only. The construction used the surrounding language of the claim to define arm portion. The claim itself says the arm portion is configured to engage the at least said one guide and is contiguous with the forced transfer element. That's what the claim says. And those are the words that Judge Darrow used to construe arm portion. And those are terms of structure, not only function. But the claim construction we're talking about is of the phrase arm portion before one gets to the additional claim language. What is it about, what structure is being attributed to arm portion in the original construction? The original, the structure of arm portion that is being imparted from the original construction is that it must be, is that the arm portion must be structured to fit the guides that are in the first element. There's a first element and a second element. The arm portion structure must be, must have a forced transfer element that is contiguous to it and it must be structured to fit the guides in which it rides when the two elements are clasped together to bring the gripping elements from the outer into the middle. I guess I have the same question as Judge Toronto. I'm trying to understand how you understand what arm portion means as a matter of structure. Is it fair to say that you think it means any portion of the gripping element that engages one set, at least one guide in the forced transfer element? Yeah, it is the portion of the gripping element that is structured to engage the guide. So why wouldn't Buchanan meet that limitation? Buchanan doesn't have the claimed second element with an actuation portion, which is what the applicants argued. So are you saying that Buchanan's gripping element has a portion that's configured to engage one set, at least one guide in a forced transfer element? Well, when Apex's technical expert... I just need a yes or no question, answer to that question. Yes, we did not contend at trial that Buchanan lacked an arm portion. We contended at trial that Buchanan did not have the claimed second element with an actuation portion, which is the same argument the applicants made the first time. During prosecution of this patent, though... During prosecution, the first time Buchanan was... In response to both times, the Buchanan rejection was raised that Buchanan lacks an arm portion and that there's no structure that can be an arm portion. So that makes me think that, well, the way you want this claim term to be understood now goes against what you argued against Buchanan during the original prosecution. I strongly disagree with that, Your Honor. In the original prosecution, when Buchanan was raised in 2008, the applicant argued that Buchanan does not show the elements united in the same way as the claims, that Buchanan does not teach or disclose the second element as claimed, and argued the examiner failed to specify where Buchanan teaches an arm portion as claimed. And when the examiner came back and pointed to an arm portion in Buchanan and then said parentheses adjacent to crimping element 25, that's when your side came back and said, no, no structure is adjacent to the crimping portion 25 in Buchanan. So that, I mean, the only logical read of that is you're saying that there is no structure that can be attributed in Buchanan's plunger to be an arm portion. Well, and so, assuming for the moment that that's the way I read your prosecution, then to me that indicates that there has to be a structure that is separate from the body portion structure that represents the arm portion. And that's how you overcame the Buchanan rejection in the first instance. That is not how they overcame Buchanan in the first instance. What if I read it that way, that I said it? Well, in the second time when the examiner said adjacent 25, the same problem was present, which is that the examiner had identified the entire plunger of Buchanan 24 as the body portion. And when the applicant said there was no structure adjacent 25. What if I read the examiner's rejection as saying, no, it's the area of the plunger that's adjacent to the crimping portion 25 that represents, in the examiner's view, the arm portion of the plunger? That still does not get around the fact that the examiner identified plunger 24 as the body portion. And so when the applicant answered the adjacent 25 identification, in context it is very clear on that same page it says the examiner has only identified a gripping element, a body portion, and a force transfer element, and no other structure. And in the applicant's claim, by contrast, there is an arm portion, a body portion, a force transfer element, and a gripping element. And so the statement that adjacent 25, there is no structure, flowed from the examiner's mislabeling of plunger 24 as the body portion. Because based on the logic of the claims, if that entire gripping element is the body portion, then it is not the claimed gripping element. Can't be. And that is exactly what the, that is exactly what Lager had explained when they, after they said there is no structure adjacent 25. And query whether, I think the fairest read of the prosecution history, is that the examiner realized he'd made a mistake when he issued the Buchanan rejection the second time. Because the applicant had already argued that Buchanan doesn't, that the examiner hadn't identified the arm portion, and that Buchanan doesn't have the second element as claimed. And the examiner withdrew the Buchanan rejection and said, I've considered your arguments and they're persuasive. Later, three years later, he issues another Buchanan rejection. The applicant's lead argument is, hey, we've already been down this road, and you withdrew this rejection. We incorporate our prior arguments by reference. Thank you. Thank you. I'll give you a minute to rebuttal. Appreciate it. Mr. Cernan. May it please the court, Mark Cernan on behalf of Apex Tool Group. This appeal turns on the claim construction of a single term, the arm portion limitation of the claim gripping element, and all of the intrinsic and extrinsic evidence supports the ultimate construction of the court by Judge Pallmeyer and rejects any consideration of loggerheads and the prior construction by Judge Dera. Loggerhead is advocating here for a construction that is literally inconsistent with every tier of the hierarchy of intrinsic evidence, claims, specification, prosecution history, and effectively seeks to read out the term arm portion from the claims. And that's what happened, and that's what led to the jury trial result that we had. The ultimate construction, identifiable structure that projects from the body portion of the gripping element, is a very plain-meaning construction that gives some meaning, some structural meaning to arm portion, which a construction has to give it when we look at, again, the claims, the specification, and the file history. Let's start with the claims. We have a gripping element that is not simply a gripping element with various functions. It's a gripping element with multiple portions, body portion, arm portion, force transfer element, and then functions associated with each of those portions. And so we need to have the function of the arm portion, which is configured to engage at least one of the guides, associated with this particular portion. I will also point out that the language used is not simply a label such as a first portion, a second portion. Other parts of the claim actually have first element, second element. Here we have actual words used like arm and body that connote particular structure for those portions. What structure does it connote? Again, a projection from the body portion. Why isn't a monolith, why doesn't a monolith, like what we're talking about here, include a projection from the end of the monolith? First of all, a person of ordinary skill in the yard would not, in the mechanical context, look at a monolithic block and see something that they would refer to as an arm portion. There's nothing projecting from, there's no separately identifiable structure that we can say, okay, this is the body and then here is the separately identifiable structure that is the arm. Why is it not separately identifiable? It's the stuff above the end. So there's multiple reasons. One, again, I think the natural reading of this, you have a body and then you're going to have some projection. Just remind me, it was separately identifiable in the claim construction? Yes, yes, identifiable structure that projects from the body portion. Why isn't it separately identifiable? You knew exactly what I was talking about when I said the part that sticks up from the end. Well, we know that's not correct, if I can pivot to the specification in the file history, because we have embodiments in the specification that are this monolith, this block, Before we get to those parts, which I tend to agree is rather strong for you, one of the dictionary definitions that was asserted is that the body portion has to be the main portion. Yeah, and so I would say for a gripping element, the main portion is the portion that does the gripping. In fact, that's the way the claim reads, the body portion adapted for engaging the work piece. So that is the portion that's doing the gripping. That's not a matter, I would think just kind of outside mechanical tool land, that body and arm means the body is in some way larger than the arm. It could be, I mean, it's the mass that's doing the gripping here. Well, but that's a functional point about main, and I guess I was curious, so if you look at the, you know, like 55 on your brief, the little group of red and green structures, and if I look at, you know, the second one, which is essentially a V, it sure looks to me there like the body portion is not even close to the main portion. It looks like a nutcracker, right? Yeah, again, I would suggest that a person with a learning skill in the art looking at main portion, body portion in this context where we're talking about a gripping element, it's the mass doing the gripping. It's the part doing the gripping. So body portion has a functional definition, but you think arm portion can't have a functional definition. No, I would suggest that body has some structure to it as well. Again, it's the main mass that's doing the work of the gripping element, but then we have to have something separately identifiable. We can't simply have a monolith and then hypothetically draw imaginary lines to find, you know, to define by function and find arm portions in there. And again, we know that because we look at the specification where all of the embodiments that have this projection from the gripping part, the body part, all are described as having arm portions. We then have one embodiment, figures 10 through 12, where it's this, what you're describing, this monolith. It's actually got a tapered end, but it's just a monolith, and that one is described as having the force transfer element through the body portion. It has no arm portion. And so we know that based on when we look at the embodiments in the specification, there is no arm portion when we simply have a monolith as you're describing. I would also point out that just basic Federal Circuit precedent in terms of looking at claim language and giving meaning to words and claims tells us that arm portion has to be given some meaning. What Judge Dara and what Loggerhead is suggesting here is simply erase it from the claim. Their construction simply incorporates other words already in the claim and erases the concept of arm from the arm portion limitation. I would refer you to the Apple v. Motorola case, the Engel Industries case, that talks about when you have multiple portions, they cannot logically be one and the same. Well, you know, you could have a block with a distal portion and a proximal portion, right? I mean, nobody would have a dispute that some monolithic block can't have a distal portion and a proximal portion. You certainly can. Maybe if you describe something as a biasing portion, and then, you know, in the context of the patent, you could see, oh, this is the left-hand side of the block, and that's what they refer to as the biasing portion. You would understand that even though it's not separately identifiable, per se, when you just look at the block from five feet away, there is a distal portion, a proximal portion, a biasing portion. I would agree that if there were different labels applied to portions, there might be a top portion and a bottom portion, and we know that the bottom portion does the gripping, and that's described in the specification. I agree with you that there would be different circumstances in which, if we had multiple portions described in the way you did, a person of skill in the art might be able to identify them. But here, what we have is body portion and arm portion. We have a monolithic block, and we know that a monolithic block can't possibly have an arm portion. Again, the specification tells us that, but also the file history. And, Judge Chen, you talked about it. Just remind me, what exactly in the spec are you referring to? Again, the figures 10 through 12 that Logger had acknowledged during the briefing, and that figures 10 through 12, they say, don't have a forced transfer element through the arm portion as is required by the claims. You can conclude from that that it does not have an arm portion. And it's exactly the type of structure that we have in the accused product here, actually, where you have the forced transfer element through the block. If we can then now look at the file history, if there's any doubt that remains from looking at the claim language and the specification, the file history absolutely puts it to rest. As Judge Chen pointed out, there were not simply suggestions, okay, I'm going to go along with the examiner's mistake here and refer to things in a mistaken way. There were definitive statements. Applicant respectfully submits that Buchanan's gripping element does not contain an arm portion. This is at 24654. Same statement in 24755. They went on and talked about how the gripping element of Buchanan does not disclose the same structure as Claim 1, namely a body portion, an arm portion, and a forced transfer element. Buchanan was a monolithic block, and the point that was made multiple times by Loggerhead was it does not have an arm portion. It only has a body portion. And, again, the reason we know that the Loggerhead construction can't be right is because their expert acknowledged that under the Judge Dara construction, Buchanan would have an arm portion. So we're in this situation that this Court has noted where we have this nose of wax. It's construed one way to obtain allowance. Buchanan doesn't have an arm portion. And then they get a construction at the district court originally where Buchanan, they acknowledge, did have an arm portion. And that just is clearly wrong in the context of what we're talking about here. In terms of what the district court found, we think that the district court correctly found that what happened at prosecution was simply applying a plain meaning construction of arm portion that required it be some separately identifiable projection from the body portion. And by applying that to a block, Loggerhead was correct during prosecution that it didn't have an arm portion, and it was correct to adopt a claim construction that reflected that. Once you then get to the proper construction, in terms of requiring some separately identifiable structure that you can point to as an arm portion, it then follows that the summary judgment of non-infringement was correct. All we have here is a block, a monolithic block. And it's not surprising that that's the result. Because as we noted in the briefing... Help me out on the following. If I didn't have Buchanan and the prosecution history, and I just had the words separately identifiable projection, it's not clear to me that summary judgment would be warranted saying this accused monolith doesn't meet that. Is there case law that says not just for the claim construction, taking the claim construction's words as a given, but for purposes of applying them, we can and should or must look back at the comparator distinguished in the prosecution history, namely Buchanan. Right. I would say, one, you can get there that there is no separately identifiable structure based on when we then look at, again, the claim language, as well as the specification. Give me that assumption for purposes of... Okay. And then I think you do need to look at what did they distinguish here, and the fact that, again, this is all consistent. There's nothing inconsistent about what's happening in the prosecution history. I don't think there's any narrowing of any plain meaning going on here. This is simply further confirmation of the plain meaning of what an armed portion is. We have to have something separately identifiable projecting that's going to then do the function that's required in the claim. And absolutely, I think, your case law suggests that you have to look at that as part of figuring out what this means. And we then know that something that's a block like Buchanan can't possibly meet that. Do you have in your mind a citation or two that says that using the material that was used in the claim construction process for purposes of conducting a summary judgment inquiry into infringement? A lot of times that's in the context of doctrine of equivalence, and certainly... Which is also here. Sure, that's certainly here. And the Konopko case talks about how DOE can't be used to erase meaningful structural and functional limitations on which the public is entitled to rely. But what about literal infringement? Again, literal infringement, there's just nothing there. I don't know that there's cases that say that when you don't have things with multiple portions, you can't possibly... I guess I would go back to the Engel Industries case, which said when you describe multiple portions, you need to find... Those can't simply be one and the same that meet the multiple portions of a claim. Well, you can look to the prosecution history to construe the claim in which, right? Absolutely, you can look to the prosecution history. Isn't that what's happening here? Yes, absolutely. That's what Judge Pallmeyer did. Look to the prosecution history. And again, it's just simply confirming the specification, the claim language, what's going on here. And Judge Pallmeyer correctly found that what we have here is there's nothing... The prosecution history confirms that a block does not have an arm portion. Our accused product, again, designed... What happened here was from day one, my client designed the product. To add additional features, we actually created a better product. But in order to get around the patents, make sure we weren't infringing on Mr. Brown's patents, made sure that it based the gripping element based on what was expressly, explicitly distinguished during prosecution. So it's no surprise that then when we finally get a proper claim construction that there is no infringement as a matter of law and the doctrine of equivalence can't encompass it. If there's any other questions, I'm happy to answer them. But if not... Okay, thank you. Thank you. Mr. Skiermont, you have a minute. Thank you, Your Honor. I wanted to address the no embodiment in the patent or that every embodiment in the patent has arm portions that project or extend. That is not accurate. In Figure 18 of the 470 patent at Appendix 00234 have gripping elements with a planar configuration and a V-shaped body portion as the specification explains at Appendix 253, Column 11, Lines 29 to 67. That embodiment in Figure 18 that shows monolithic gripping elements is claimed in Claims 18 to 19 of the 470 patent. And for all of the same reasons as described on the prosecution history argument about whether something has to be separately identifiable, it was identified. The arm portion was identified. The structure of the arm portion was identified at trial by loggerheads... Thank you, Mr. Skiermont. Thank you, Your Honor. Thank all counsel and cases submitted.